IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| WILLIAM STEPHEN BRUMLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-CV-394 |
| | ) |
| HAMILTON COUNTY, TENNESSEE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This civil action is before the Court for consideration of the motion for summary judgment filed by Defendants Hamilton County Sheriff's Department ("HCSD") and Hamilton County, Tennessee [doc. 18] and the motion for summary judgment filed by Defendant Jim Hammond and the John Doe defendants [doc. 20]. Plaintiff has responded [doc. 24]. Oral argument is unnecessary, and the motion is ripe for the court's determination.

Plaintiff has filed suit pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his safety and failing to protect him from other inmates while he was incarcerated. Plaintiff also raises claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-101, *et seq*. For the reasons that follow, the motions will be granted and the case will be dismissed.

## I.     BACKGROUND

On August 31, 2015, Plaintiff was an inmate in custody at the Hamilton County jail. [Doc. 24-1 at 1]. That morning, Plaintiff was being transported from the jail to a court hearing in the Hamilton County General Sessions Court. [Doc. 24-1 at 1]. Corrections Deputy Jorge Araiza was in charge of escorting the detainees from the jail to the court that morning. [Doc. 19-1 at 1]. In the course of his transport to the court, Plaintiff was placed on an elevator with other inmates who were being moved from the court holding area in the basement of the building to either the second or third floor. [Doc. 19-1 at 1; Doc. 24-1 at 2]. Plaintiff alleges that, after several inmates were instructed to board the elevator, the elevator was "completely full," with at least 12 inmates already in the elevator. [Doc. 24-1 at 2]. However, Deputy Araiza contends that, while there were a number of detainees on the elevator, there was room for two or three more individuals. [Doc. 19-1 at 2]. Inmate Dmarquis Bell was then instructed to board the elevator, and Plaintiff and several others shouted that there was no more room on the elevator. [Doc. 24-1 at 2]. Mr. Bell boarded the elevator nonetheless. [Doc. 24-1 at 2]. After Mr. Bell boarded the elevator, he swung with his handcuffed hands and hit Plaintiff in the face. [Doc. 19-1 at 2; Doc. 24-1 at 1-2].

Plaintiff never informed Deputy Araiza that he and Mr. Bell had any prior history, or that he felt that his safety was threatened in any way by Mr. Bell. [Doc. 19-1 at 2]. After Deputy Araiza witnessed the assault, he immediately removed Mr. Bell from the elevator and secured him in a cell in the court holding area. [Doc. 19-1 at 2]. Thereafter, he moved Plaintiff to the court holding area office and began administering first aid, including cleaning the wound with an antibacterial solution and holding pressure on the wound with

2

gauze. [Doc. 19-1 at 2]. Deputy Araiza then determined that Plaintiff needed additional medical care, and Plaintiff was taken back to the jail to receive medical treatment. [Doc. 19-1 at 3]. Jeff Williams, the nurse manager of the Hamilton County jail clinic, treated Plaintiff for his injuries. [Doc. 19-6 at 1-2]. Specifically, Mr. Williams cleaned Plaintiff's injuries, then sealed the two lacerations by applying Dermabond, a wound closure adhesive. [Doc. 19-6 at 2]. Mr. Williams states that the use of Dermabond without stiches indicates that the wounds were superficial enough as to not require both stitches and Dermabond. [Doc. 19-6 at 3]. Mr. Williams also applied Neosporin to an abrasion that Plaintiff received in the attack. [Doc. 19-6 at 3]. After he received medical care, Plaintiff returned to the court holding area, and was taken before a judge for his hearing. [Doc. 19-1 at 3]. Mr. Bell was later criminally charged for his assault of Plaintiff. [Doc. 19-5 at 2-4]. Plaintiff was seen again by the jail clinic on September 1, 2015, for an unrelated issue, and did not raise any further concerns about his injuries from the assault. [Doc. 19-6 at 3]. Plaintiff asserts that he learned, after his release, that he had a broken nose and a pinched nerve in the back of his neck as a result of the assault. [Doc. 24-1 at 1].

## II. STANDARD OF REVIEW

Defendants' motions are brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1).

3

This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

## III.   ANALYSIS

### A. Hamilton County's Section 1983 Liability

1. <u>Claims Against Hamilton County</u>

Hamilton County cannot be held liable pursuant to § 1983 for constitutional torts committed by its officers and employees based on the doctrine of respondeat superior. There is no respondeat superior liability under § 1983 for municipalities and governmental entities. *Monell v. Dep't of Soc. Serv.of the City of New York*, 436 U.S. 658, 694 (1978); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. For the county to have liability under § 1983, a plaintiff is required to demonstrate that the county, through its deliberate conduct, was the "moving force" behind the alleged violation of his federal constitutional rights. *Id*. A municipal policy or custom cannot be shown by one instance of misconduct. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005). However, an unlawful policy or custom may be shown by a policy of inadequate training or supervision. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist*., 455 F.3d 690, 700 (6th Cir. 2006).

In order to succeed on a failure to train theory, the plaintiff must show that: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to, or actually caused, the injury at issue. *Id*. However, "[t]hat a particular officer may be

5

unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). In *Ellis*, the Sixth Circuit identified two instances in which a finding of deliberate indifference would be appropriate: "(1) where the training lapse occurs despite 'foreseeable consequences' that will flow from the lapse; and (2) where the training lapse occurs despite 'repeated complaints' to the municipality about the issues that should have been dealt with in training." *Lee v. Metro.Gov't of Nashville and Davidson Cty.*, 596 F. Supp. 2d 1101, 1124 (M.D. Tenn. 2009) (quoting *Ellis*, 455 F.3d at 700-01).

In this case, it is not entirely clear from the complaint what policy or procedure Plaintiff believes that the employees of Hamilton County were insufficiently trained on. Plaintiff's response to the motions for summary judgment appears to indicate that HCSD officers were insufficiently trained on the HCSD's own policy regarding the transport of inmates inside a facility, which states that inmates should not enter an elevator without an officer. [Doc. 24 at 3]. However, there is no evidence of "repeated complaints" about HCSD officers leaving inmates unattended in elevators. Consequently, Plaintiff must proceed under a "single incident" theory.

The Supreme Court has stated that deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff has provided no evidence, in response to the motions for summary judgment, indicating that HCSD officers were not actually trained on the Department's inmate-transport policies, but rather, relies

on the fact that the policy was not followed at the time of his attack. The parties do not dispute that no officer was on the elevator at the time that Plaintiff was attacked. However, such a single incident of failure to follow a policy is insufficient to support a failure to train claim. *See Canton*, 489 U.S. at 390-91.

Plaintiff's allegations regarding failure to train ultimately amount to conclusory allegations, without any supporting facts regarding what training HCSD officers did or did not receive, and what further training was necessary. It is significant that there is no evidence of past complaints regarding inmate transportation in the record. While a history of past conduct is not necessary to establish municipal liability, courts are more inclined to find a "custom" when there has been a history of complaints or similar behavior. *See Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

Given the lack of evidence in the record supporting Plaintiff's claims, and the fact that federal courts should generally refrain from "second-guessing municipal employee-training programs," *Canton*, 489 U.S. at 391-92, Plaintiff's § 1983 claims against Hamilton County will be dismissed with prejudice.

2. <u>Claims against HCSD</u>

Federal district courts have routinely held that sheriff's departments are not subject to liability under § 1983. *See Mathes v. Metro. Gov't of Nashville and Davidson Cty.*, No. 3:10-cv-496, 2010 WL 3341889, at *1-2 (M.D. Tenn. Aug. 25, 2010) (providing an extensive list of Tennessee federal district courts finding that sheriff's departments in

7

Tennessee are not subject to liability under § 1983). A county sheriff's department is not a legal entity separate from its parent county. *Pruitt v. Lewis*, No. 06-2867, 2007 WL 4293037, at *2 (W.D. Tenn. Dec. 6, 2007). Instead, if a plaintiff is able to establish any liability under *Monell*, it is the county, not the sheriff's department, that would be liable. *Walker v. Union Cty.*, No. 13-102-DUB-HBG, 2013 WL 1912936, at *1 (E.D. Tenn. May 8, 2013). Accordingly, for the same reasons that the § 1983 claims against Hamilton County are dismissed, the § 1983 claims against the HCSD, which are themselves claims against Hamilton County, are dismissed.

3. <u>Claims Against Sheriff Hammond and John Doe Defendants in their Official Capacities</u>

Likewise, Plaintiff's suit against Sheriff Hammond, and the John Doe employees of the Sheriff's Department, in their official capacities, are nothing more than a suit against Hamilton County. *See e.g., Leach v. Shelby Cty.,* 891 F.2d 1241, 1245-46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself."); *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself."). Therefore, the § 1983 claims against Sheriff Hammond and the John Doe defendants, in their official capacities, will be dismissed for the same reason as discussed above.

## B. Section 1983 Claims Against Sheriff Hammond

Supervisory liability, distinct from municipal liability, cannot be imposed in a § 1983 action based on a theory of respondeat superior without proof of personal involvement. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it must be based on active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (internal quotation marks omitted). "A supervisor is not liable under § 1983 for failing to train unless the supervisor either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (internal quotation marks omitted). The central question, therefore, is whether Sheriff Hammond "implicitly authorized, approved, or knowingly acquiesced" in the alleged violations of Plaintiff's Eighth Amendment rights. For purpose of this analysis, the Court will assume, without deciding, that the John Doe defendants engaged in unconstitutional conduct.

Notably, Plaintiff appears to allege that Sheriff Hammond failed to properly train the John Doe defendants on maintaining safety during the transport of prisoners on elevators. However, a general failure to train claim has been routinely rejected by the Sixth Circuit as a means to impose liability on a supervisor in his or her individual capacity. *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 845 (E.D. Tenn. Aug. 10, 2011) (citing *Ontha v. Rutherford Cty.*, 222 F. App'x 498, 503-05 (6th Cir. 2007)). Absent personal

involvement in the underlying unconstitutional act, the attempt to hold municipal supervisors liable in their individual capacities for their alleged failure to adequately train employees improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability. *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563, (6th Cir. 2011). Generally, there are two ways of imposing supervisory liability: (1) a pattern of conduct; or (2) a truly egregious single incident. *Dillingham*, 809 F. Supp. 2d at 846 (citing *Ontha*, 222 F. App'x at 504-05). Because, as discussed previously, Plaintiff has failed to establish a pattern of similar incidents, Sheriff Hammond will only be liable if there was "essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Ontha*, 222 F. App'x at 504 (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982) (citations omitted)).

Viewing the facts in the light most favorable to the non-moving party, there is simply no evidence that Sheriff Hammond encouraged or authorized the alleged actions of the John Doe defendants. Additionally, Plaintiff has produced no evidence, beyond circumstantial evidence that policy was not followed on a single incident, that Sheriff Hammond failed to train HCSD officers on any HCSD policy. Plaintiff has failed to cite any specific affirmative act by Sheriff Hammond that would subject him to liability. Accordingly, the § 1983 claims raised against Sheriff Hamond in his individual capacity will be dismissed with prejudice. Furthermore, because Sheriff Hammond cannot be held liable as a supervisor, there is no need to determine whether Sheriff Hammond is entitled to qualified immunity. *See Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If

there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity.").

### C. Section 1983 Claims against John Doe Defendants

The court concludes that Plaintiff's § 1983 claims brought against unnamed officers and staff of the HCSD, in their individual capacities must be dismissed with prejudice. After filing his complaint, Plaintiff failed to exercise due diligence to take discovery and conduct a reasonable investigation to promptly determine the actual names of the John Does. Plaintiff has not timely made a motion pursuant to Fed. R. Civ. P. 15(a) for leave to amend his complaint to correctly identify John Does by their real names. Moreover, Plaintiff has not timely effected service of process upon the individual defendants identified in the complaint by the pseudonym John Doe as required by Fed. R. Civ. P. 4(m).

Section 1983 itself does not contain a statute of limitations. Where Congress does not specify a period of limitations in a federal statute for bringing a civil action, the court is required to apply the most closely analogous statute of limitations provided under the laws of the State of Tennessee. *Eidson v. State of Tennessee Dep't of Children's Serv.*, 510 F.3d 631, 634 (6th Cir. 2007). *Id*. The statute of limitations accrues and commences to run when the plaintiff knows or has reason to know of the injury that is the basis of the complaint. *Id*.

Any cause of action that Plaintiff may have against John Does in their individual capacities under § 1983 accrued, at the latest, on August 31, 2015, the date when Plaintiff was attacked. Consequently, Plaintiff had one year from August 31, 2015, within which

to file suit on his § 1983 claims. On August 31, 2016, the statute of limitations expired on any cause of action that Plaintiff may have against John Does in their individual capacities under § 1983 and such claims are now time-barred. Plaintiff did not timely amend his complaint prior to August 31, 2016 to identify John Does by their real names and add them as defendants to this action.

Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may initially file a complaint that names an unknown defendant by using a "John Doe" appellation or similar pseudonym. *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *12 (E.D. Tenn. Nov. 4, 2009). However, simply identifying an unknown defendant in a complaint by the pseudonym of John Doe is not enough to commence a civil action against that unknown defendant. *Id.* A civil action cannot be commenced against a fictious party such as an unknown John Doe. *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Until the plaintiff files an amended complaint under Fed. R. Civ. P. 15 that identifies and adds or joins a John Doe defendant by his true name, the John Doe allegations in the complaint are mere surplusage. *Pierce v. Hamblen Cty.*, No. 2:09-cv-34, 2009 WL 2996333, at *1 (E.D. Tenn. Aug. 17, 2009). A civil action is commenced against a John Doe defendant when the complaint is amended under Rule 15 to specifically name and identify that defendant by his true name and the plaintiff effects service of process upon that named defendant in compliance with Rule 4. The unknown John Does in Plaintiff's complaint have never been properly joined in this lawsuit and served with process.

At this juncture it is too late for Plaintiff to make a motion pursuant to Rule 15(a) for leave to amend his complaint to identify John Does by their real names and add or join them as individual defendants in this case. The scheduling order provides that the deadline for joinder of additional parties is 150 days before trial, which has expired. [Doc. 12 at 5].

Moreover, a motion to amend the complaint under Rule 15 at this point in time would be futile. The federal civil rights claims brought against John Does in their individual capacities under § 1983 are time-barred by the statute of limitations. New party defendants may not be added to a complaint after the statute of limitations has run. If Plaintiff were to attempt to amend his complaint to identify John Does by their real names, the amendment would not relate back under Rule 15(c)(1) to the date when the original complaint was filed for purposes of applying the statute of limitations.

Rule 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment changes the party or the naming of a party against whom a claim is asserted if the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). A plaintiff's lack of knowledge pertaining to an intended defendant's identify does not constitute a "mistake concerning the proper party's identity" within the meaning of Rule 15(c)(1)(C)(ii). *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Amending a complaint to add or substitute a named defendant for an unknown John Doe defendant is considered a change in parties, not a mere substitution of parties. *Id*. The Sixth Circuit has held that Rule 15(c) was not intended to protect a plaintiff who does not know the identity of defendants and does not bother to

13

ascertain the defendants' identities within the limitations period. *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012). Thus, any attempt to amend the complaint to name the John Doe defendants at this juncture would not relate back, and therefore, the claims would be barred by the statute of limitations.

Additionally, Plaintiff's claims against John Does are also dismissed on the alternative ground that Plaintiff failed to identify them by their real names and effect service of process upon them within 120 days from the filing of the original complaint as required by Rule 4(m). *Dubose v. City of Morristown*, No. 2:07-cv-115, 2009 WL 1766008, at *6 (E.D. Tenn. June 22, 2009). Accordingly, all § 1983 federal civil rights claims brought against unnamed John Does officers in their individual capacities are dismissed with prejudice.

### D. Supplemental Jurisdiction

All that remains for consideration in this action are the pendent state law claims that the Plaintiff has raised, namely, his claims under the TGTLA. Pursuant to 28 U.S.C. § 1367(c)(2), a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if "the district court has dismissed all claims over which it has original jurisdiction." That being the case here, the court will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendants' motions for summary judgment [docs. 18, 20] will be **GRANTED**. The court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's pendent state law claims, and those claims will

14

be **REMANDED** to the state court.  Plaintiff's federal claims are **DISMISSED**.  An order consistent with this opinion will be entered.

s/ Leon Jordan
United States District Judge
